# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA HELLEN ROGERS, | : | Civil No. 3:26-cv-1616 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| PA ATTORNEY GENERAL, *et al.*, | : | |
| Respondents | : | |

## MEMORANDUM

Petitioner Barbara Hellen Rogers ("Rogers") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed in the Court of Common Pleas of Monroe County, Pennsylvania. (Doc. 1-2). For the reasons set forth below, the Court will dismiss the habeas petition as untimely, and a certificate of appealability will not issue.

## I. Background[1]

On March 29, 2019, following a jury trial, Rogers was convicted of third-degree murder. (*See* Doc. 1-2, at 1; *Commonwealth v. Rogers*, No. CP-45-CR-0002045-2017 (Pa. Ct. Comm. Pl. Monroe Cnty.)). On June 10, 2019, the trial court sentenced Rogers to a term of imprisonment of 15 to 40 years. (Doc. 1-2, at 1). Rogers filed a post-sentence

[1] The Court derived all pertinent facts and procedural history primarily from the habeas petition itself, Petitioner's exhibits, and the Pennsylvania Superior Court opinions dated February 23, 2021 and March 18, 2025. (Docs. 1-2 through 1-15).

motion, which the trial court denied. *See Commonwealth v. Rogers*, 2021 WL 688875, at 1 (Pa. Super. 2021); *Commonwealth v. Rogers*, No. CP-45-CR-0002045-2017.

Rogers then filed a direct appeal. (Doc. 1-2, at 3; *see Commonwealth v. Rogers*, 2021 WL 688875). On February 23, 2021, the Pennsylvania Superior Court affirmed Rogers' judgment of sentence. (*Id.*). Rogers did not seek review with the Pennsylvania Supreme Court. (*Id.*). Therefore, her judgment of sentence became final 30 days later on March 25, 2021. *See* 42 Pa.C.S. § 9545(b)(3) (stating that judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review); Pa.R.A.P. 1113(a).

On October 5, 2022, Rogers filed a *pro se* petition under the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. ANN. § 9541, *et seq.* (Doc. 1-2, at 4-5, 8, 11-13; Doc. 1-7; *see Commonwealth v. Rogers*, 2025 WL 846233 (Pa. Super. 2025)). The PCRA court appointed counsel to represent Rogers. *See Commonwealth v. Rogers*, 2025 WL 846233, at *1. On March 14, 2023, counsel filed a motion to withdraw and a no-merit letter. *See id.* On August 11, 2023, the PCRA court granted counsel's motion to withdraw. *See id.* On January 31, 2024, the PCRA court issued a notice of intention to dismiss the PCRA petition pursuant to Pennsylvania Rule of Criminal Procedure 907. *See id.* On March 28, 2024, the PCRA court dismissed the petition as untimely. *See id.*; Doc. 1-2, at 4-5, 8, 11-13.

Rogers filed a *pro se* notice of appeal with the Pennsylvania Superior Court, arguing that the PCRA court erred in dismissing the PCRA petition as untimely. *See id.* Rogers

argued that her mental incompetence prevented her from timely filing her PCRA petition. *See id.*; *see Commonwealth v. Rogers*, 2025 WL 846233, at *1. The PCRA court issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), concluding that Rogers did not exercise due diligence in filing her petition. (Doc. 1-6).

On March 18, 2025, the Pennsylvania Superior Court affirmed the order of the PCRA court, concluded that the PCRA petition was untimely, and found as follows:

> While Appellant's claim is stated as arguing her mental incompetence prevented her from timely filing the underlying petition, the argument in support of that claim has nothing to do with that claim. In fact, she argues that the reason she only filed the underlying petition in 2022 is because she allegedly first learned of her medical condition in 2022. There are no facts or allegations that her medical condition prevented her from timely filing the underlying petition. Thus, to the extent that Appellant claims that her medical condition prevented her from timely filing the underlying petition, the claim has not been properly preserved or raised before us. Accordingly, as the PCRA court did below, we will address the claim actually argued, *i.e.*, the medical report she received in 2022 qualifies as a newly-discovered fact.
>
> Here, the PCRA court determined in its Pa.R.A.P. 1925(a) opinion that Appellant failed to prove the requirements of the newly-discovered fact exception.
>
>> Although [Appellant] acknowledges that her [petition is] untimely, she alleges that she discovered new medical evidence on August 20, 2022[,] which "would have changed the outcome of her trial." The evidence is a radiology report, dated April 11, 2017 ("Report")[,] which [Appellant] attached to her [p]etition as "Exhibit 1". In reviewing the Report, the "Findings" section references the pineal cyst as well as well as the "mild bifrontal atrophy" and "minimal periventricular white matter disease compatible with chronic small vessel microvascular ischemic change" that [Appellant] describes as "organic brain damage".

> [Appellant] alleges several reasons that she could not have acquired the Report prior to trial:
>
> a. Between April 11, 2017[,] when the [R]eport was written[,] and July 15, 2017[,] when she was arrested[,] [Appellant] had no reason to acquire her medical records because her criminal case had not begun yet. Even if she had requested the [R]eport the day she had the MRI performed, she still would not have gotten the [R]eport to her home in the 3 months and 4 days before she was incarcerated. Further, [Appellant] could not have safely kept her medical records in her home because she lived with the victim, who deprived her of her right to privacy.
>
> b. When [Appellant] had a medical appointment with her "general doctor" on June 1, 2017, [she] mentioned only the pineal cyst and not the "organic brain damage."
>
> c. One month before the shooting, [Appellant] "missed her appointment with the neurologist because she was not allowed to leave the house" on June 15, 2017.
>
> d. Prison Regulation 164.524 prevented [Appellant] from acquiring her medical records beginning July 15, 2017[,] when her incarceration began....
>
> ....
>
> [Appellant]'s petition asserts that once she "wanted to learn more her pineal cyst" she requested the Report on July 27, 2022, more than five years after the initial MRI was performed. [Appellant] received the Report approximately two weeks later at Cambridge Springs prison on August 10, 2022. [Appellant] further asserts that she, "just had a very strong feeling to request her medical records," and that she was able to receive them because prison officials "don't pay any attention to inmate's mail" despite their obligation to do so.

PCRA Court's Notice of Disposition Without a Hearing, 1/31/24, at 2-4 (internal citations to the PCRA petition omitted).

Against this background, the PCRA court made the following findings and conclusions:

> [The PCRA court] does not find [Appellant]'s argument convincing, nor [does it] find that [Appellant] exercised due diligence. Although a defendant need not exercise "perfect vigilance nor punctilious care," [Appellant] here has not shown even the required "reasonable efforts" to uncover facts she believes may have supported her claim. Having undergone the MRI, [Appellant] was aware that she would have records from the test. However, she did not request the Record, nor does she allege she asked her trial counsel to acquire the documents. Although she alleges that it takes a lengthy period of time to acquire any such records, [Appellant] also states that she received her records within approximately two weeks of requesting them. However, she did not so until July 27, 2022. [Appellant] has failed to show that she exercised due diligence in obtaining her MRI record and results.

*Id.* at 4 (internal citations omitted).

We agree with the PCRA court's analysis and conclusions. We also note that the new facts alleged here were known to Appellant. The mere fact Appellant did not act on the information does not make information unknown to her. The information was available to her since 2017. Yet, she decided to know more about it only in 2022. Furthermore, the report requested and obtained in 2022 is not a new fact but simply another source for previously known facts.

While Appellant lists several reasons for why she was not able to get the Report earlier, none of these reasons actually prevented her from getting the Report earlier. Indeed, Appellant does not state so.

Finally, Appellant pleaded no facts concerning the efforts she took to discover this "new" fact. In sum, Appellant has no explanation for not getting the Report earlier, other than the desire to get it came to her in 2022 as opposed to years earlier.

In light of the foregoing, we conclude that the underlying petition is untimely, and that Appellant failed to prove the newly-discovered facts exception. As such, we cannot entertain the merits of the underlying petition.

Order affirmed.

*Commonwealth v. Rogers*, 2025 WL 846233, at *2-4 (footnotes omitted); Doc. 1-7.

On April 10, 2025, Rogers sought review with the Pennsylvania Supreme Court, and, on October 21, 2025, the Pennsylvania Supreme Court denied her petition for allowance of appeal. *Commonwealth v. Rogers*, No. 214 MAL 2025, 348 A.3d 87 (Table) (Pa. 2025); Doc. 1-8.

On or about January 27, 2026, Rogers filed the instant federal habeas petition.[2] (Doc. 1-2).

Then, on March 23, 2026, Rogers filed a second PCRA petition in state court. *Commonwealth v. Rogers*, No. CP-45-CR-0002045-2017. On August 4, 2026, the PCRA court dismissed the second petition. *Id.*

Respondents filed a response to the federal habeas petition, arguing that it must be dismissed because the claims are "palpably incredible and patently frivolous or false", and because Rogers failed to exhaust her state court remedies. (Doc. 16). However, the Court has *sua sponte* considered the timeliness of Rogers' petition and will dismiss the petition as time barred. *See Day v. McDonough*, 547 U.S. 198, 209 (2006) ("we hold that district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's

---

2 Under the prisoner mailbox rule, the Court deems the petition filed on January 27, 2026, the date Rogers signed it. *See Houston v. Lack*, 487 U.S. 266 (1988) (holding that that date on which a prisoner delivers documents to prison authorities for mailing is considered the filing date); *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).

habeas petition"); *Long v. Wilson,* 393 F.3d 390, 403 (3d Cir. 2004) (courts may "rais[e] the AEDPA statute of limitations defense *sua sponte* even after an answer has been filed").

## II. Timeliness Discussion

The court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that [she] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition filed under § 2254 must be timely filed under the stringent standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See* 28 U.S.C. § 2244(d)(1). Specifically, a state prisoner requesting habeas corpus relief pursuant to § 2254 must adhere to a statute of limitations that provides as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28. U.S.C. § 2244(d); *see Jones v. Morton*, 195 F.3d 153, 157 (3d Cir. 1999). Thus, under the plain terms of § 2244(d)(1)(A), a state court criminal judgment does not become final until appeals have been exhausted or the time for appeal has expired. *See Nara v. Frank*, 264 F.3d 310, 314 (3d Cir. 2001).

Rogers was sentenced on June 10, 2019. She filed a direct appeal, and, on February 23, 2021, the Pennsylvania Superior Court affirmed the judgment of sentence. Rogers' judgment of sentence became final on March 25, 2021, at the expiration of the 30-day period for filing a petition for allowance of appeal with the Pennsylvania Supreme Court. *See* 42 Pa.C.S. § 9545(b)(3) (stating that judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review). Rogers had one year after her sentence became final to file her federal habeas petition. Thus, the AEDPA statute of limitations under § 2254(d)(1)(A) expired on March 25, 2022. However, Rogers did not file the instant habeas petition until January 27, 2026, almost four years after the expiration of the statute of limitations. Therefore, the habeas petition must be dismissed unless the statute of limitations was subject to statutory or equitable tolling.

A. Statutory Tolling

Pursuant to 28 U.S.C. § 2244, the running of the limitation period is suspended for the period of time when properly filed state post-conviction proceedings are pending in any state court. *See* 28 U.S.C. § 2244(d)(2). Here, the statute of limitations began running on March 25, 2021 and, absent any tolling, would expire on March 25, 2022.

Although Rogers filed a PCRA petition on October 5, 2022, she failed to toll the statute of limitations for filing her federal habeas petition because the PCRA petition was untimely and not properly filed. Rogers' judgment of sentence became final on March 25, 2021 and she had one year from that date, until March 25, 2022, to timely file a PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1) (under the PCRA, any petition must be filed within one year of the date the judgment of sentence becomes final). However, she did not file her PCRA petition until October 5, 2022. The state courts indisputably found that the PCRA petition was untimely.

As stated, § 2244(d)(2) tolls the one-year statute of limitations with respect to the "time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2) (emphasis added). An application is "properly filed" for statutory tolling purposes "when its delivery and acceptance are in compliance with the [state's] applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Rogers filed her PCRA petition on October 5, 2022, after the expiration of the one-year grace period. Because this PCRA

petition was untimely, it did not properly toll the AEDPA statute of limitations. *See Long*, 393 F.3d at 394-95 (holding that PCRA petition had no effect on tolling because "the limitations period had already run when it was filed"). In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Supreme Court held that "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *See id.* at 414 (quoting *Carey v. Saffold*, 536 U.S. 214 (2002)). Caselaw is clear that an untimely PCRA petition is not "properly filed" and, therefore, does not toll the statute of limitations. *See id.* at 417 ("Because the state court rejected Petitioner's PCRA petition as untimely, it was not 'properly filed," and he is not entitled to statutory tolling under § 2254(d)(2)."). Accordingly, Rogers is not entitled to statutory tolling for the period during which her PCRA petition was pending. As a result, absent equitable tolling or the applicability of the actual innocence exception, Rogers' federal habeas petition is almost four years late.

B. <u>Equitable Tolling</u>

Equitable tolling of the limitations period is to be used sparingly and only in "extraordinary" and "rare" circumstances. *See Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006); *LaCava v. Kyler*, 398 F.3d 271, 274-75 (3d Cir. 2005). It is only in situations "when the principle of equity would make the rigid application of a limitation period unfair" that the doctrine of equitable tolling is to be applied. *Merritt v. Blaine*, 326 F.3d 157, 168 (3d Cir. 2003). Generally, a litigant seeking equitable tolling must establish the following two

elements: "(1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way." *Pace*, 544 U.S. at 418.

With respect to the diligent pursuit of rights, a petitioner must demonstrate that he or she exercised reasonable diligence in investigating and bringing the claims. *See Robinson v. Johnson*, 313 F.3d 128, 142 (3d Cir. 2002). Mere excusable neglect is not sufficient. *See LaCava*, 398 F.3d at 276. Moreover, "the party seeking equitable tolling must have acted with reasonable diligence throughout the period [she] seeks to toll." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).

Extraordinary circumstances have been found where (1) the respondent has actively misled the petitioner, (2) the petitioner has in some extraordinary way been prevented from asserting his or her rights, (3) the petitioner has timely asserted his or her rights mistakenly in the wrong forum, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim. *See Jones*, 195 F.3d at 159; *Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir. 2005). Significantly, even where extraordinary circumstances exist, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

Here, the Court finds that Rogers failed to exercise reasonable diligence throughout the limitations period. By the time she filed her PCRA petition, both the state and federal collateral relief statutes of limitations had expired. The state courts expressly found no merit to Rogers' claim that her mental incompetence prevented her from timely filing her PCRA petition. *See Commonwealth v. Rogers*, 2025 WL 846233. As set forth by the Pennsylvania Superior Court, the new facts alleged by Rogers were known to her, the information was available to her since 2017, and yet she chose not to act until 2022. *Id.* at *4. For precisely the same reasons, these same "new facts" were known to Rogers for many years, and do not establish that she exercised reasonable diligence throughout the period she seeks to toll.

In addition to Rogers' failure to demonstrate the exercise of reasonable diligence, she failed to demonstrate that extraordinary circumstances obstructed her pursuit of relief in either state or federal court. There is no indication that she was actively misled, that she was in some extraordinary way prevented from asserting her rights, that she timely asserted her rights mistakenly in the wrong forum, or that the state court misled her regarding the steps that she needed to take to preserve her claims. Hence, equitable tolling of the AEDPA statute of limitations is not warranted on this basis.

C. Actual Innocence

The Supreme Court has held that a convincing claim of actual innocence will overcome the habeas limitations period. *McQuiggin v. Perkins*, 569 U.S. 383 (2013). This

requires the petitioner to supplement his or her claim with new, reliable evidence of factual innocence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The Supreme Court has explained that this is an exacting standard. "The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner]." *McQuiggin*, 569 U.S. at 394-95 (quoting *Schlup*, 513 U.S. at 329). While a petitioner alleging actual innocence need not prove diligence in order to assert such claim, "[un]explained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *Id.* at 385; *see also Schlup*, 513 U.S. at 332 ("[a] court may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of…evidence [of actual innocence]").

"The gateway actual innocence standard is 'demanding' and satisfied only in the 'rare' and 'extraordinary' case where 'a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Reeves v. Fayette SCI*, 897 F.3d 154 (3d Cir. 2018) (quoting *McQuiggin*, 569 U.S. at 392).

Rogers will only overcome her time-barred petition if she can make a credible "showing of actual innocence" under *McQuiggin*. Rogers failed to provide new reliable exculpatory evidence to support an actual innocence claim, and none can be extracted from

the claims raised in her petition. As a result, Rogers has not demonstrated that the "actual innocence" exception to the AEDPA statute of limitations applies.

## III. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of [her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As the Supreme Court has explained,

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Rogers failed to demonstrate that a certificate of appealability should issue.

## IV. Conclusion

The Court will dismiss Rogers' petition (Doc. 1-2) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 as untimely, and a certificate of appealability will not issue.

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: August 31, 2026